# EXHIBIT A

Case 1:08-cv-00171-S-DLM Document 1 Filed 05/06/2008 Page 1 of 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES FIDELITY & GUARANTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SOUTH SHORE UTILITY CONTRACTORS, INC., ANTHONY F. ROSCITI, JR. and HENRY V. ROSCITI, JR.,<br><br>Defendants. | CA 08 171S<br><br>CIVIL ACTION NO. |

**COMPLAINT**

The Plaintiff, United States Fidelity and Guaranty Company ("USF&G"), states and alleges a cause of action against South Shore Utility Contractors, Inc., Anthony F. Rosciti, Jr. and Henry V. Rosciti, Jr. (hereinafter referred to collectively as "Indemnitors" or "Defendants") as follows:

**PARTIES**

1. The Plaintiff, USF&G, is a Maryland corporation authorized to do business and issue surety bonds in Rhode Island, among others, with a principal place of business in Baltimore, Maryland.

2. The Defendant, South Shore Utility Contractors, Inc. ("South Shore"), upon information and belief, is a corporation with its principal place of business at 44 Maria Avenue, Johnston, Rhode Island.

3. The Defendant, Anthony F. Rosciti, Jr., upon information and belief, is an individual residing at 15 Morgan Court, Lincoln, Rhode Island.

4. The Defendant, Henry V. Rosciti, Jr., upon information and belief, is an individual residing at 1324 Chopmist Hill Road, Scituate, Rhode Island.

Case 1:08-cv-00171-S-DLM Document 1 Filed 05/06/2008 Page 2 of 5

## JURISDICTION

5. The Court has jurisdiction in this matter under 28 U.S.C. §1332 as the plaintiff has citizenship diverse from the defendants, and the amount in controversy, exclusive of interest, exceeds $75,000.00. Venue is proper in this Court under, among other things, 28 U.S.C. §1391 as a substantial part of the events giving rise to the controversy arose in this district.

## BACKGROUND

6. At all times relevant to this action, USF&G has been in the business of, among other things, issuing payment and performance bonds to various obligees on various projects.

7. South Shore is a commercial construction contractor licensed to do business in the State of Rhode Island.

8. On or about June 12, 2001, the Indemnitors/Defendants executed a General Agreement of Indemnity ("GAI"). A true and accurate copy of the GAI is attached hereto as Exhibit A and incorporated herein by reference.

9. Pursuant to the terms and conditions of the GAI, the Indemnitors/Defendants are required to:

> … indemnify SURETY and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interest and expenses of every nature … which the surety may sustain, incur or become liable for by any reason of having executed or procured the execution of any BOND or BONDS, or by making any investigation of any matter concerning any BOND or BONDS, or when prosecuting or defending any action in connection with any BOND or BONDS, or by recovering any salvage or enforcing this agreement.

See GAI, ¶4.

10. In reliance on the GAI, USF&G issued Bond No. S0504419 ("the Bond") on behalf of South Shore.

Case 1:08-cv-00171-S-DLM Document 1 Filed 05/06/2008 Page 3 of 5

11. USF&G received claims on the Bond and made payments in the amount of $218,259.50 and incurred associated expenses in the amount of $857.50 totaling $219,117.00.

12. South Shore has reimbursed USF&G for one of the losses in the amount of $124,307.95, leaving a balance of $94,809.05 owed to USF&G.

13. In addition, as a direct and proximate result of USF&G's issuance of the Bond at the request of and on behalf of South Shore, USF&G has incurred and continues to incur legal and other expenses and costs.

14. USF&G also expects to sustain further losses in the form of additional attorneys' fees and expenses as a result of this litigation, all of which are recoverable under the specific terms of the GAI.

15. The GAI requires the Defendants to collateralize and otherwise hold USF&G harmless from all losses, costs or expenses incurred in connection with the Bond.

16. To date, the Indemnitors have failed and/or refused to reimburse and/or indemnify USF&G in accordance with their obligations under the GAI.

**Count I – Indemnity**

17. USF&G repeats and incorporates by reference the allegations contained in paragraphs 1 through 16 as if fully set forth herein.

18. As a direct result of USF&G's execution of the Bond on behalf of its principal, South Shore, and at the request of the Defendants, and based on the payment of claims related thereto, USF&G, as surety, has sustained losses, and anticipates sustaining further losses in prosecuting this action.

19. The GAI requires that the Defendants hold USF&G harmless from all losses, costs and expenses incurred in connection with the claims on the Bond.

Case 1:08-cv-00171-S-DLM Document 1 Filed 05/06/2008 Page 4 of 5

20. As a result, the Defendants are liable, as indemnitors, to USF&G for all losses, costs, and expenses incurred in relation to any claims on the Bond it issued on behalf of South Shore.

**Count II - Common Law Indemnity**

21. USF&G repeats and incorporates by reference the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

22. As a direct and proximate result of USF&G's issuance, as surety, of the Bond on behalf of its principal, South Shore, and at the request of South Shore, USF&G has sustained losses and expenses, and anticipates sustaining further losses and expenses in prosecuting this claim for indemnity.

23. Pursuant to USF&G's common law right of indemnity, the Indemnitors are liable to USF&G for all past and future losses, costs and expenses incurred in relation to claims on the Bond, in addition to the costs, expenses and attorneys' fees incurred in prosecuting this action.

**Count III - Breach of Contract**

24. USF&G repeats and incorporates by reference the allegations contained in paragraphs 1 through 23 as if fully set forth herein.

25. The Defendants' failure to comply with the terms of the GAI constitutes a breach of the GAI for which the Defendants are liable.

26. The Defendants' refusal to reimburse USF&G for its losses constitutes a breach of the GAI.

27. USF&G has complied with all conditions precedent to commence this action.

**Count IV - Specific Performance**

28. USF&G repeats and incorporates by reference the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

Case 1:08-cv-00171-S-DLM Document 1 Filed 05/06/2008 Page 5 of 5

29. Pursuant to USF&G's common law rights, as well as its rights set forth in the GAI, the Defendants are required to hold the surety harmless from any loss, costs or expenses, including attorneys' fees and interest.

30. The Defendants have failed to indemnify the surety for its losses, costs, expenses, and attorneys' fees.

**Prayer For Relief**

WHEREFORE, USF&G requests that this Court enter a judgement against the Defendants jointly and severally: (1) requiring Defendants to immediately reimburse USF&G for all incurred losses, plus interest, costs, attorneys' fees and any other incurred expenses; (2) to provide collateral to USF&G in an amount necessary to properly protect it against any potential claims; (3) a judgment against the Defendants for any and all amounts that might be adjudged against it in the pending claims on the Bonds; and (4) all other relief to which it is entitled.

Respectfully submitted,

UNITED STATES FIDELITY & GUARANTY COMPANY,

By Its Attorneys,

CharCretia V. Di Bartolo, Bar I.D. #5862
HINSHAW & CULBERTSON LLP
155 S. Main St., Suite 304
Providence, RI 02903
401-751-0842 (telephone)
401- 273-8543 (facsimile)

Dated: May 5, 2008

Case 1:08-cv-00171-S-DLM Document 1-3 Filed 05/06/2008 Page 1 of 7

PU 94925

**StPaul Surety**

## GENERAL AGREEMENT OF INDEMNITY

WHEREAS, **South Shore Utility Contractors, Inc., Anthony F. Rosciti, Jr., & Henry V. Rosciti, Jr.**, (hereinafter collectively called UNDERSIGNED) may from time to time request **St. Paul Fire and Marine Insurance Company** and/or **Seaboard Surety Company** and/or **St. Paul Guardian Insurance Company** and/or **St. Paul Mercury Insurance Company** and/or **United States Fidelity and Guaranty Company** and/or **Fidelity and Guaranty Insurance Underwriters, Inc.** and/or **Fidelity and Guaranty Insurance Company** and/or any and all affiliates, subsidiaries, divisions, successors, assigns, co-sureties, and/or reinsurers (hereinafter collectively called SURETY) to execute as surety or guarantor, or procure the execution of, certain surety bonds, undertakings, guaranties, stipulations or other obligatory agreements (all such agreements being hereinafter collectively called BONDS); and

WHEREAS, the UNDERSIGNED by executing this Agreement represent that they have a material and beneficial interest in the obtaining of such BONDS by each of the CONTRACTORS.

NOW, THEREFORE, in consideration of the execution of any one or more such BONDS, the UNDERSIGNED, for themselves, their respective personal representatives, successors and assigns, jointly and severally, covenant and agree, with respect to all BONDS heretofore or hereafter executed for the CONTRACTOR, that:

1. This Agreement binds each UNDERSIGNED to SURETY with respect to all BONDS executed or procured for any UNDERSIGNED executing this Agreement and for any CONTRACTOR as defined below. If any BOND or BONDS shall be executed or procured for any Joint Venture to which any CONTRACTOR is or may become a party, the liability and obligations of the UNDERSIGNED to SURETY shall be the same as if such BOND or BONDS had been executed for the CONTRACTOR acting alone, notwithstanding any agreement between or among the Joint Venturers. CONTRACTOR as used in this Agreement shall mean: any UNDERSIGNED; any partnership, association, corporation, successor, assign, affiliate, any related entity, subsidiary and/or division of the UNDERSIGNED, whether now existing or hereafter formed or acquired; and any other person who obtains BONDS from SURETY at the request of any UNDERSIGNED.

2. If SURETY executes or procures execution of a Bid or Proposal BOND or Consent of Surety to the issuance of BONDS, it may decline to execute or procure execution of any BONDS required in connection with any award made under the proposal for which such Bid or Proposal BOND or Consent of Surety to the issuance of BONDS is given; and such declination shall not diminish or alter the liability of the UNDERSIGNED with respect to such Bid or Proposal BOND or Consent of Surety.

3. This Agreement shall apply to any and all BONDS requested by the CONTRACTOR, whether or not such BONDS were executed before or following the date of this Agreement; and, further, this Agreement shall apply to any and all BONDS executed, or the execution of which has been procured, by SURETY for any CONTRACTOR, whether or not there shall be any written application therefor executed by one or more of the UNDERSIGNED.

4. The UNDERSIGNED shall indemnify SURETY and hold it harmless from and against all claims, damages, expenses, losses, costs, professional and consulting fees, disbursements, interests and expenses of every nature (including premiums and fees due for the issuance and continuance of any BOND or BONDS) which the Surety may sustain, incur or become liable for by reason of having executed or procured the execution of any BOND or BONDS, or by making any investigation of any matter concerning any BOND or BONDS, or by prosecuting or defending any action in connection with any BOND or BONDS, or by recovering any salvage or enforcing this Agreement. In the event SURETY advances funds for the benefit of any CONTRACTOR in connection with work subject to a BOND or BONDS (hereinafter sometimes referred to as BONDED CONTRACT) and/or for the discharge of obligations incurred in connection with a BONDED CONTRACT, such advances shall be deemed "losses" under the terms of this Agreement whether or not such advances have been so used by the CONTRACTOR.

Case 1:08-cv-00171-S-DLM Document 1-3 Filed 05/06/2008 Page 2 of 7

5. (A) At SURETY's sole discretion, SURETY may demand and, upon SURETY's demand, the UNDERSIGNED shall deliver over to SURETY collateral security acceptable to SURETY and equal in value to any reserve set up by SURETY to cover any contingent losses and any subsequent increase thereof. SURETY shall return to the UNDERSIGNED any unused portion of collateral upon termination of the liability of SURETY on any BOND or BONDS and satisfaction by the UNDERSIGNED of its obligations to SURETY under this Agreement.

(B) All payments received for or on account of a BONDED CONTRACT, and all monies due and to become due under any such contract or contracts, whether in the possession of the CONTRACTOR or otherwise, are trust funds, in which SURETY has an interest, for the payment of obligations incurred in the performance of such contract and for labor, materials and services furnished in the prosecution of the work provided in such contract or any extension or modification thereof.

6. The SURETY may settle or compromise any claim, liability, demand, suit or judgment upon any BOND or BONDS executed or procured by it, and any such settlement or compromise shall be binding upon the UNDERSIGNED. The vouchers or other evidence of payments made by SURETY shall be *prima facie* evidence of the fact and amount of the liability of the UNDERSIGNED to SURETY.

7. The UNDERSIGNED shall furnish to SURETY such information as it may request concerning any BONDED CONTRACT, and the CONTRACTOR hereby authorizes those with whom such contracts are made to furnish to SURETY all information concerning such contracts and the work thereunder. The SURETY may from time to time, in its sole discretion, examine the books and records of the CONTRACTOR.

8. (A) In the event (i) the CONTRACTOR is declared to be in default in the performance of a BONDED CONTRACT or (ii) the CONTRACTOR or the UNDERSIGNED shall breach any terms of this Agreement (hereinafter collectively referred to as "EVENT OF DEFAULT"), then the CONTRACTOR does hereby assign, or, in the alternative, the UNDERSIGNED shall cause the CONTRACTOR to assign, to SURETY all their right, title and interest to: (a) all payments, monies and properties that may become payable on a BONDED CONTRACT; (b) all supplies, equipment and material used in performance of a BONDED CONTRACT; and (c) all subcontracts related to work under a BONDED CONTRACT and all surety bonds securing the performance of, or the discharge of obligations incurred in connection with, such subcontracts, hereby agreeing that SURETY may enforce the same in the name of the CONTRACTOR, or otherwise. In addition, in any such event aforesaid, SURETY, at its option and in its sole discretion, may take possession of all or any part of the work under any or all BONDED CONTRACTS, and at the expense of the UNDERSIGNED complete, or cause the completion of, such work, or re-let, or consent to the re-letting or completion thereof; and in such event, SURETY may invite the Obligees, and the Obligees are authorized, to declare the CONTRACTOR in default under such contracts, any provisions thereof to the contrary notwithstanding. Upon the happening of an EVENT OF DEFAULT, SURETY shall have the right to take immediate possession of the supplies, tools, plant, equipment, and materials and to use, and consume, if necessary, the same in the performance of any BONDED CONTRACT by itself or by others.

(B) Upon the happening of an EVENT OF DEFAULT, the UNDERSIGNED authorize and empower SURETY, or any person or persons designated by SURETY, to execute in the name of the CONTRACTOR any agreements deemed necessary or desirable by SURETY to provide absolute title to SURETY of any funds, property and rights as are hereby assigned, transferred or conveyed; and the CONTRACTOR hereby authorizes SURETY, or such person or persons designated by SURETY, to take immediate possession of such funds, property, and rights, to collect such sums as may be due from the CONTRACTOR or other person, and to endorse, in the name of the CONTRACTOR, and to collect any checks, drafts, warrants and other agreements made and issued in payment of any such funds. The SURETY is authorized to assert and prosecute any right or claim hereby assigned, transferred or otherwise conveyed in the name of the CONTRACTOR and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances in its sole and absolute discretion, subject only to the requirement that it act in good faith, which shall be defined as the absence of deliberate or willful malfeasance. The SURETY may sell any property assigned to it pursuant to this Agreement at public or private sale, with or without notice, at any time or place, without incurring any liability of any kind. The SURETY may purchase any of the property at such sale. Neither SURETY nor the Obligees shall incur any liability to any of the UNDERSIGNED in the exercise of the rights granted by this Section 8, except for deliberate and willful malfeasance.

(C) The UNDERSIGNED shall not, while any BOND or BONDS shall be outstanding and shall not have been released or discharged to SURETY's satisfaction, take any action that would affect or diminish the rights of SURETY under this Section 8.

Case 1:08-cv-00171-S-DLM Document 1-3 Filed 05/06/2008 Page 3 of 7

9. The SURETY is authorized and empowered without notice to or knowledge of the UNDERSIGNED to amend any BOND or to assent to a change in the contracts or obligations covered by said BOND, or to execute additional BONDS, it being expressly understood and agreed that the UNDERSIGNED shall remain bound under the terms of this Agreement even though any such action by SURETY does or might substantially increase the liability of the UNDERSIGNED. The UNDERSIGNED waive notice of default or any other acts giving rise to a claim under a BOND or liability of SURETY under the BONDS. The SURETY shall have the right to decline to execute any BOND and to assent or refuse to assent to changes in any BOND without in any way releasing or affecting the obligations of the UNDERSIGNED to SURETY.

10. If the execution of this Agreement by any of the UNDERSIGNED shall be invalid for any reason, or if any of the UNDERSIGNED shall be released from their obligations hereunder, the terms and conditions hereof shall nevertheless be binding upon and continue in full force and effect as to the rest of the UNDERSIGNED. Nor shall it be a defense to any claim by SURETY hereunder that it was to have procured additional indemnity or security, or that it has procured additional indemnity or security, or that it has released other indemnity or security in respect of any such BOND or BONDS. If any provision or provisions of this Agreement be void or unenforceable under the laws of any place governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted. All rights and remedies of SURETY under this Agreement shall be cumulative, and the exercise of or failure to exercise any particular right or remedy at any time shall not be considered to be an election of remedy or a waiver of any other right or remedy. The rights, powers and remedies afforded SURETY by the terms of this Agreement are in addition to, and not in lieu of, any and all other rights, powers, and remedies which SURETY may have or acquire against the UNDERSIGNED or others whether by the terms of any other agreement or by operation of law.

11. This Agreement constitutes both a security agreement to SURETY and also a financing statement, in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect. The filing or recording of this Agreement shall be solely at the option of SURETY, and may be filed by SURETY without in any way subrogating, restricting or limiting the rights of SURETY under this Agreement, under law or in equity. The failure to file this Agreement shall not release or excuse any of the obligations of the CONTRACTOR or the UNDERSIGNED under this Agreement. The SURETY may add schedules to this Agreement, describing specific items of security covered by this Agreement. For the purpose of recording this Agreement, a photocopy acknowledged before a Notary Public to be a true copy hereof shall be regarded as an original. The SURETY, when recording this Agreement, may also prepare, execute, and file a UCC-1 form pursuant to the power of attorney granted to SURETY under this Agreement.

12. The UNDERSIGNED hereby irrevocably constitute and appoint SURETY as their true and lawful attorney with the right, but not the obligation, to exercise all of the rights of the UNDERSIGNED assigned, transferred and conveyed to SURETY in this Agreement; hereby giving and granting to SURETY full power and authority to make, execute, endorse and deliver any agreements for the full protection intended to be given to SURETY hereunder as the UNDERSIGNED might or could do.

13. This Agreement, its riders and addenda may be executed in separate counterparts, none of which need contain signatures of all parties, each of which shall be deemed an original, and all of which taken together constitute one and the same instrument.

14. Except as hereinafter in this paragraph provided, any of the UNDERSIGNED may, upon written notice by registered mail to St. Paul Surety, 5801 Smith Avenue, Baltimore, MD, 21209-3653, Mailstop MC52, to be effective not less than twenty (20) days after receipt, limit their obligations under this Agreement to BONDS executed by SURETY for the CONTRACTOR prior to the effective date of such notice; provided, however, that such notice shall not be effective with respect to any BOND or BONDS executed after such date (a) upon the award of a contract to the CONTRACTOR on a bid or proposal in respect of which SURETY has executed and delivered a bid or proposal bond prior to such date, or (b) which SURETY has become committed to execute prior to such date, or (c) in connection with any claim, lien, litigation, or other matter involving or relating to any BOND or BONDS executed prior to such date or thereafter executed as hereinbefore in (a) or (b) provided. Such limitation of the obligations of any of the UNDERSIGNED shall not operate to limit the obligations of, or release, the rest of the UNDERSIGNED whether or not they have notice or knowledge thereof.

Case 1:08-cv-00171-S-DLM Document 1-3 Filed 05/06/2008 Page 4 of 7

15. The rights and remedies afforded SURETY by the terms of this Agreement may not be waived or modified unless agreed to in a writing executed by SURETY. There have been no oral or other agreements as a condition precedent or inducement to the execution of this Agreement by any of the UNDERSIGNED.

16. Neither this Agreement nor any rights or obligations of the UNDERSIGNED hereunder shall be assigned without the written consent of SURETY endorsed hereon and signed by an officer of SURETY.

DATED this 12th day of June, 2001.

**THE UNDERSIGNED REPRESENT TO THE SURETY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.**

**SIGNATURE OF ALL INDEMNITORS REQUIRED**
**SEE ATTACHED SIGNATURE PAGE(S)**

**StPaul Surety**

Signature Page for Corporations

THIS PAGE IS ATTACHED TO, AND FORMS PART OF, THE GENERAL AGREEMENT OF INDEMNITY OR RIDER DATED June 12, 2001.

CORPORATE INDEMNITOR(S):

ATTEST:

(Signature of Vice President)

Henry V. Rosciti, Jr., Vice President

(Print or Type Name and Title)

South Shore Utility Constractors, Inc.
(Company Name)

By:
(Signature)

Anthony F. Rosciti, Jr., President
(Print or Type Name and Title)

Address: 44 Maria Ave.

Johnston, RI 02919

EIN: [redacted]

---

ATTEST:

(Signature of Secretary or an Assistant Secretary)

(Print or Type Name and Title)

(Company Name)

By:
(Signature)

(Print or Type Name and Title)

Address:

EIN:

---

ATTEST:

(Signature of Secretary or an Assistant Secretary)

(Print or Type Name and Title)

(Company Name)

By:
(Signature)

(Print or Type Name and Title)

Address:

EIN:

**StPaul Surety**

## Signature Page for Individuals

THIS PAGE IS ATTACHED TO, AND FORMS PART OF, THE GENERAL AGREEMENT OF INDEMNITY OR RIDER DATED June 12, 2001.

WITNESS:

(Signature)

MICHAEL CINQUEGRANO
(Print or Type Name)

Address: 54 GLOUCESTER ST.
PROV. R.I. 02908

INDIVIDUAL INDEMNITOR(S):

(Signature)

Anthony F. Rosciti, Jr.
(Print or Type Name)

Address: 15 Morgan Court
Lincoln, RI 02865

Social Security No. [redacted]

---

WITNESS:

(Signature)

MICHAEL CINQUEGRANO
(Print or Type Name)

Address: 54 GLOUCESTER ST.
PROV R.I. 02908

(Signature)

Henry V. Rosciti, Jr.
(Print or Type Name)

Address: 1324 Chopmist Hill Road.
Scituate, RI 02857

Social Security No. [redacted]

---

WITNESS:

(Signature)

(Print or Type Name)

Address:

(Signature)

(Print or Type Name)

Address:

Social Security No.

Case 1:08-cv-00171-S-DLM Document 1-3 Filed 05/06/2008 Page 7 of 7

**StPaul Surety**

**GENERAL AGREEMENT OF INDEMNITY**
**RESOLUTION AND CERTIFICATION**

WHEREAS, the **President of South Shore Utility Contractors, Inc.** (the "Corporation") has executed or will execute a certain GENERAL AGREEMENT OF INDEMNITY, a copy of which is attached hereto and made a part hereof, in favor of St. Paul Fire and Marine Insurance Company, Seaboard Surety Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Underwriters, Inc., Fidelity and Guaranty Insurance Company, and any and all affiliates, subsidiaries, divisions, successors, assigns, co-sureties, and reinsurers, hereinafter referred to collectively as "SURETY," protecting it in connection with its assuming suretyship as more fully described therein, said GENERAL AGREEMENT OF INDEMNITY having been read at a meeting held on 6-18, 2001, and fully considered and approved by the directors present; and

WHEREAS, the said GENERAL AGREEMENT OF INDEMNITY has been accepted by SURETY upon the warranty of said officer that this Corporation had and continues to have such an interest in said suretyship as to empower it to make said GENERAL AGREEMENT OF INDEMNITY.

NOW, THEREFORE, BE IT RESOLVED that said officer of this Corporation was authorized, as of June 18, 2001, and continues to be authorized, to execute on behalf of this Corporation said GENERAL AGREEMENT OF INDEMNITY, and that the act of said officer of this Corporation who has already executed said GENERAL AGREEMENT OF INDEMNITY is hereby unanimously ratified and confirmed as the act of this Corporation.

BE IT FURTHER RESOLVED that the aforesaid warranty that this Corporation had and continues to have such an interest in said suretyship as to empower it to make said GENERAL AGREEMENT OF INDEMNITY be, and it is hereby, ratified and confirmed as the warranty of this Corporation.

I hereby certify that I am the **Vice President of South Shore Utility Contractors, Inc.** and that the above Resolution is a true and accurate copy of a resolution unanimously adopted by the Board of Directors at a meeting duly called and held on June 18, 2001, in the office of the said Corporation, at which meeting a quorum of the Directors was present.

IN WITNESS WHEREOF, I have hereunto set my hand this 18th day of June, 2001.

[signature]
(Signature of the Vice President)

Henry V. Rosciti, Jr.
(Print or type name and title)